UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHIRLEY SHUBIN, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 12-07372 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security ("SSI") income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the sole disputed issue.

**Administrative Proceedings**

Plaintiff filed applications for disability insurance benefits and SSI benefits on August 27, 2008, alleging that she had been disabled since October 20, 2001, due to asthma, degenerative disc disease, and a knee injury. [JS 2; Administrative Record ("AR") 31, 139]. Plaintiff's applications were denied initially and upon reconsideration. [JS 2; AR 75-79]. Plaintiff requested an administrative hearing, which was conducted before Administrative Law Judge Teresa L. Hoskins Hart (the "ALJ") on March 10, 2010. [AR 46-69]. Plaintiff, who was represented by an attorney, testified on her own behalf. [AR 48]. Testimony also

was received from Ruth Arnush, a vocational expert. [AR 63.]

On June 21, 2010, the ALJ issued a written decision denying plaintiff's applications for benefits. [AR 29]. The ALJ found that plaintiff had the following severe impairments: mild C6-7 disc space narrowing; asthma; high blood pressure; mild diabetic retinopathy; and obesity. [AR 31-34]. The ALJ determined, however, that plaintiff's impairments, whether considered singly or in combination, did not meet or equal an impairment included in the Listing of Impairments (the "Listing"). [AR 34-35]. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff's residual functional capacity ("RFC") varied over time. [AR 35]. The ALJ determined that from October 20, 2001, through December 31, 2006, plaintiff's date last insured for disability insurance benefits purposes, plaintiff retained the RFC to perform a restricted range of light exertion and was required to avoid "concentrated exposure[] to extreme cold and humidity and exposure to odors, dust, fumes, gases, and poor ventilation." [AR 35]. The ALJ also determined that beginning on August 27, 2008, the date plaintiff filed her SSI benefits application, plaintiff was restricted to sedentary work, with the same non-exertional limitations discussed above.[1] [AR 35]. The ALJ found that plaintiff's RFC from October 20, 2001 through December 31, 2006 did not preclude her from performing her past relevant work as an office manager, but that her RFC as of August 27, 2008 precluded her from doing so. [AR 38-39]. Based on the testimony of the vocational expert, the ALJ determined that as of August 27, 2008, plaintiff could perform alternative jobs that exist in significant numbers in the national economy. [AR 39-40]. The ALJ therefore concluded that plaintiff was not disabled at any time up to the date of her decision. The Appeals Council denied plaintiff's request for review. [AR 1-3].

**Background**

Plaintiff was born in 1957, and she was 52 years old when the ALJ issued her decision. [AR 124]. Plaintiff earned a high school diploma and had past relevant work as an office manager and a caretaker for her ailing mother. [AR 50, 52, 62].

The testimony and documentary evidence indicate that plaintiff has been receiving treatment for

---

[1] There was a gap in plaintiff's eligibility for benefits because she was not entitled to disability insurance benefits after her disability insured status expired, and she was not entitled to receive SSI benefits for the period before the month in which her SSI benefits application was filed. See 20 C.F.R. §§ 404.131, 416.330, 416.335.

asthma since 2004. She was first seen by Dr. Tashine Wang for symptoms of asthma and bronchitis on November 24, 2004. [AR 216-217, 257-258]. Dr. Wang prescribed asthma medications, including an inhaler. [AR 216-217, 257-258]. Plaintiff returned to Dr. Wang two years later on July 10, 2006, and July 18, 2006, and was again prescribed asthma medications. [AR 216-217, 257-258].

After her last visit with Dr. Wang in July 2006, plaintiff received no further treatment for asthma until November 6, 2008, when she was admitted to the UCLA Harbor-Medical Center for shortness of breath. [AR 249]. At that time, she had been experiencing shortness of breath for a month and reported that walking exacerbated her condition. [AR 249]. Plaintiff was treated with Prednisone, Albuterol, and Atrovent, and discharged later that evening. [AR 249-253]. She was prescribed asthma medications and referred for blood pressure management. [AR 248].

From November 6, 2008, through April 4, 2009, plaintiff received follow-up care for her high blood pressure and asthma from Dr. Eduardo Ornedo at the Sacred Heart Family Medical Clinic. [AR 260-274]. Throughout this time, Dr. Ornedo prescribed medications to control plaintiff's asthma and blood pressure. [AR 260-274].

Plaintiff was once again hospitalized on April 20, 2009, at the King/Drew Medical Center, after experiencing shortness of breath. [AR 276]. She was treated with Albuterol, Prednisone, and Proventhal and released that same day. [AR 283]. Plaintiff returned to the King/Drew Medical Center for a follow-up visit on April 27, 2009, and was once again prescribed asthma medications. [AR 280]. A pulmonary function test administered on that date revealed a reduced flow rate in her lungs that was consistent with her asthma. [AR 321].

On May 23, 2009, plaintiff was admitted to the St. Francis Medical Center for shortness of breath. [AR 293]. She was prescribed Prednisone and Albuterol, and referred to her primary care physician for follow-up care. [AR 296]. Plaintiff continued to seek medical care for asthma through November 2011, and was prescribed several medications, including an inhaler. [ AR 635-643, 647-655, 668-673].

Plaintiff also has been diagnosed with degenerative disc disease. [AR 209]. After an x-ray taken on April 28, 1999, revealed degenerative spondylosis of C6-7, plaintiff began receiving physical therapy treatment, including heat application, exercise training, and postural control training. [AR 204- 213]. She likewise sustained a left knee sprain in September 2000, as well as a right elbow strain on December 21,

1  2000, both of which were treated with physical therapy sessions three times a week for two weeks. [AR 170-203]. This was the only occasion when plaintiff received treatment for her knee pain, despite her ongoing complaints about it. [AR 220].

In addition to asthma and degenerative disc disease, plaintiff has been diagnosed with hypertension and obesity. [AR 260-274]. She has been hospitalized and provided treatment for high blood pressure on several occasions. [AR 246-248, 260, 317-320, 329-353]. Plaintiff's medical records indicate that she does not always take those medications when she is supposed to. [AR 219, 317-320, 330].

Plaintiff's RFC was evaluated by her treating physician, Dr. Ornedo, on December 15, 2008. [AR 243-244]. Dr. Ornedo opined that she could sit, stand, and walk for no more than one hour during an eight hour work day, and for less than one hour each time. [AR 243]. He concluded that plaintiff could occasionally lift up to twenty pounds, frequently carry up to ten pounds, and occasionally carry between eleven to twenty pounds. [AR 243]. Dr. Ornedo suggested that due to her asthma, plaintiff should not be exposed to dust, fumes, and gases. [AR 244].

The record also contains an internal medicine evaluation from the Commissioner's consultative examining physician, Dr. Soheila Benrazavi, who examined on November 1, 2008. [AR 219-224]. Dr. Benrazavi's evaluation noted plaintiff's audible wheezing as well as the absence of acute distress from shortness of breath. [AR 220]. An examination of plaintiff's left knee demonstrated a normal range of motion, while her lumbar spine exhibited tenderness and pain at an extreme range of motion. [AR 223]. Based upon her objective medical findings, Dr. Benrazavi concluded that plaintiff could perform light work. [AR 223]. She further recommended postural limitations of no more than occasional climbing and stooping, and that plaintiff's work environment be reasonably free of dust, fumes, and smoke. [AR 223].

A physical residual functional assessment was conducted by a state agency consultant, Dr. Ahmed, on November 10, 2008. [AR 226-233]. Based upon a review of plaintiff's medical records from Dr. Wang, Dr. Ryan, and St. Francis Medical Center, Dr. Ahmed concluded that plaintiff could perform light work with certain postural limitations. [AR 227, 233]. He further recommended that she avoid concentrated exposure to extreme cold, humidity, and "fumes, orders, dusts, gases, poor ventilation, etc." [AR 230].

During the hearing, plaintiff testified that since 2005 her daily activities included resting, watching television, going to the post office to pick up her mail, and shopping at the market. [AR 54-55]. She visited

a friend in the hospital once a week and occasionally went to the Downey Public Library or ate lunch in the park. [AR 55-56]. She had difficulty walking across the park because she experienced either an asthma attack or shortness of breath. [AR 56]. In between her activities, plaintiff frequently rested because she experienced difficulty breathing. [AR 57]. Plaintiff testified that when she has an asthma attack, it takes her around two to three hours to recover. [AR 58]. In severe cases, her recovery takes two to three days. [AR 58]. Plaintiff uses her nebulizer twice a day and takes her asthma medication every six hours. [AR 55]. She also visits the doctor for scheduled appointments. [AR 56].

Plaintiff explained that she cannot return to work because her asthma has grown more severe with age. [AR 56]. Her hypertension is uncontrollable and limits her exertion and ability to concentrate. [AR 59]. She cannot work in a job that has deadlines because that causes her stress, which exacerbates her medical conditions. [AR 61]. On her exertional activities questionnaire, plaintiff reported that her daily activities include cleaning, washing dishes, caring for herself, shopping, and cooking. [AR 33].

The record also contains the testimony of vocational expert Ruth Arnush. [AR 62]. She classified plaintiff's past work as that of an office manager (Dictionary of Occupational Titles ("DOT") job number 219.362-010) and companion to her mother (DOT job number 309.677-010). [AR 63-64]. The vocational expert explained that plaintiff's work as an office manager was performed at a higher skill level than the semi-skilled level set forth in the DOT job, given the accounting functions she regularly performed. [AR 64]. In response to the ALJ's hypothetical questions, the vocational expert testified that a hypothetical person with a RFC for light work could perform plaintiff's past relevant work, but that one with a RFC for sedentary work could not. [AR 64-65]. A hypothetical person with the latter, however, could perform jobs such as receptionist (DOT job number 237.367-038), appointment clerk (DOT job number 237.367-010), and telemarketer (DOT job number 299.357-041). [AR 65]. Lastly, the vocational expert testified that a hypothetical person with a RFC for sedentary work, and who required two additional thirty-minute breaks each day, could only work in an accommodated work setting. [AR 66].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more

than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

The only disputed issue is whether the ALJ propounded a complete and accurate hypothetical question in adducing testimony from the vocational expert.

**Discussion**

**Vocational expert's testimony**

Plaintiff contends that the hypothetical questions posed to the vocational expert are inconsistent with her RFC as found by the ALJ, and therefore the ALJ's finding that plaintiff could perform alternative jobs in the national economy is not supported by substantial evidence. [JS 5].

The ALJ may pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities. . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Tackett, 180 F.3d at 1101. A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). If an ALJ's hypothetical question does not reflect all of the claimant's limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

The ALJ's three hypothetical questions to the vocational expert posited an individual whose

1 environmental limitations included "avoiding *concentrated exposure* to extreme cold, humidity and
2 environments with fumes, gases[,] . . . dust[,] and poor ventilation." [AR 64-65 (italics added)]. In her
3 written decision, the ALJ found that plaintiff must "avoid *concentrated exposure[]* to extreme cold and
4 humidity and *exposure* to odors, dust, fumes, gases, and poor ventilation." [AR 35 (italics added)]. The
5 ALJ's RFC finding is ambiguous in that it is unclear whether plaintiff must avoid only *concentrated*
6 *exposure* to odors, dust, fumes, and poor ventilation, as her hypothetical question indicates, or *any* exposure
7 to these environmental conditions, as her RFC finding arguably indicates. If the ALJ intended to prohibit
8 plaintiff from all exposure to these environmental conditions, then her hypothetical questions to the
9 vocational expert did not accurately reflect plaintiff's limitations, and the vocational expert's testimony
10 cannot be considered substantial evidence.

11 This apparent ambiguity may be resolved by reviewing the ALJ's decision as well as the record as
12 a whole. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (stating that a reviewing court may
13 draw "specific and legitimate inferences from the ALJ's opinion" if "these inferences are there to be
14 drawn"). For example, in determining plaintiff's RFC, the ALJ relied upon the medical opinions of Dr.
15 Benrazavi, who examined plaintiff, and Dr. Ahmed, a nonexamining physician. Dr. Benrazavi opined that
16 plaintiff's work environment must be "reasonably free" of dust, fumes, and smoke [AR 223], while Dr.
17 Ahmed indicated that plaintiff must avoid only *concentrated* exposure to "fumes, odors, dusts, gases, poor
18 ventilation, etc." [AR 230]. Although plaintiff's treating physician, Dr. Ornedo, indicated that plaintiff
19 cannot tolerate any exposure to dust, fumes and gases, the ALJ rejected this portion of Dr. Ornedo's
20 opinion.[2] [AR 38, 244]. As the ALJ explained, Dr. Ornedo's assessment of plaintiff's environmental
21 limitations was inconsistent with her medical records and he had only treated her for two months when the
22 report was made. [AR 38]. If the ALJ intended to preclude all exposure to these environmental conditions,
23 as plaintiff contends, the ALJ would not have relied on the opinions of Drs. Benrazavi and Ahmed to
24 support her RFC finding.

25 An environmental limitation that precludes only concentrated exposure to environmental conditions
26 also is consistent with plaintiff's medical history as summarized by the ALJ. As the ALJ noted, plaintiff

---

[2] Plaintiff has not challenged the ALJ's evaluation of the opinion of her treating physician, Dr. Ornedo.

was treated for asthma on only three occasions from 2004 through November 2008. [AR 32, 35, 273]. After plaintiff resumed treatment in 2008, her physician repeatedly noted that she was not compliant with her asthma medications. [AR 33, 261, 262]. When plaintiff took her medications as prescribed, the difficulty she sometimes experienced with her breathing was alleviated, and her asthma appeared reasonably controlled. [AR 35-36, 246, 248, 261, 268]. Although plaintiff has been repeatedly hospitalized for shortness of breath, her medical records indicate that her asthma is exacerbated by walking as opposed to atmospheric conditions such as dust or smoke. [AR 249, 643]. In fact, plaintiff told physicians at the LA+USC Medical Center that she has been smoking cigarettes for over twenty years and currently smokes half a pack a week. [AR 542, 668].

The most reasonable inference from the ALJ's written decision is that plaintiff must avoid only *concentrated* exposure to odors, dust, fumes, gases, and poor ventilation. Therefore, the ALJ's hypothetical questions to the vocational expert accurately incorporated the environmental limitations set forth in the RFC determination, and the ALJ's finding that plaintiff can perform alternative jobs that exist in the national economy is supported by substantial evidence.

**Harmless error**

Even assuming that a conflict exists between the ALJ's RFC finding and her hypothetical questions to the vocational expert, and that therefore that the ALJ erred in relying on the vocational expert's testimony regarding the plaintiff's ability to perform alternative work, any error was harmless. See McLeod v. Astrue, 640 F.3d 881, 886-888 (9th Cir. 2011) (holding that the same kind of harmless error rule that courts ordinarily apply in civil cases applies in social security disability cases, and that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error) (citing Shinseki v. Sanders, 556 U.S. 396, 406-409, 413-414 (2009)). The ALJ's failure to include properly supported limitations in a hypothetical question on which the vocational expert's testimony is based is not harmless error if a "proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ." Robbins, 466 F.3d at 886.

The vocational expert testified that while a hypothetical person described by the ALJ could not perform plaintiff's past relevant work, alternative jobs exist that an individual with plaintiff's limitations, transferable skills, age, and education would be able to perform. [AR 64-65]. The three jobs identified by

1  the vocational expert were the DOT jobs of receptionist, appointment clerk, and telemarketer. According
2  to the job classification information for those jobs in the DOT, none of them involves working in an
3  environment with atmospheric conditions such as dust, fumes, odors, gases, or poor ventilation. Therefore,
4  a hypothetical question that precluded all exposure to the environmental conditions identified by the ALJ
5  would ultimately have had no bearing on the vocational expert's testimony about the availability of alternate
6  jobs. Accordingly, even assuming that the ALJ's hypothetical questions did not accurately reflect plaintiff's
7  environmental limitations, any error is harmless and does not warrant reversal.

## Conclusion

9  For the reasons stated above, the Commissioner's decision is supported by substantial evidence and
10  is free of reversible legal error. Accordingly, the Commissioner's decision is **affirmed**.

11  **IT IS SO ORDERED.**

13  November 12, 2013

ANDREW J. WISTRICH
United States Magistrate Judge